OPINION OF THE COURT
 

 Levine, J.
 

 Defendant was charged with two counts of assault in the first degree as a result of an attack with a baseball bat on his girlfriend and her mother. Prior to trial, the People filed a notice of intent to use four prior bad acts of the defendant as part of their direct case to prove his commission of the offenses charged. The defense moved to preclude such evidence and in the presence of defendant and his attorney, the court set a
 
 Ventimiglia (People v Ventimiglia,
 
 52 NY2d 350) hearing date to resolve the issues. At that time, the court granted the request of defendant’s attorney to waive defendant’s appearance at the hearing. The hearing was postponed several times, but it eventually took place in defendant’s absence. Following the hearing, the court ruled that the People could not present evidence of defendant’s uncharged bad acts in its direct case, but could offer them in rebuttal on the issues of mistake, accident, justification or intent.
 

 
 *596
 
 At the conclusion of a bench trial, defendant was convicted of assault in the second degree. He appealed the conviction, arguing that he was entitled to a new trial because he was not present at the
 
 Ventimiglia
 
 hearing. The Appellate Division agreed and reversed the conviction (196 AD2d 179). Although we agree that defendant had a right to be present at the hearing, we conclude that he waived that right and accordingly reverse the order of the Appellate Division.
 

 Criminal defendants have a statutory and constitutional right to be present at all material stages of trial
 
 (see,
 
 CPL 260.20;
 
 People v Turaine,
 
 78 NY2d 871;
 
 People v Velasco,
 
 77 NY2d 469;
 
 People v Mullen,
 
 44 NY2d 1). In addition, defendants have the right to be present at ancillary proceedings when they may have "something valuable to contribute”
 
 (People v Morales,
 
 80 NY2d 450, 456) and when their presence would have a "substantial effect on their ability to defend against the charges”
 
 (People v Sloan,
 
 79 NY2d 386, 392). A key factor in determining whether a defendant has a right to be present during a particular proceeding is "whether the proceeding involved factual matters about which defendant might have peculiar knowledge that would be useful in advancing the defendant’s or countering the People’s position. If so * * * then the defendant has a right to be present”
 
 (People v Dokes,
 
 79 NY2d 656, 660).
 

 For example, in
 
 Pokes
 
 we held that
 
 Sandoval
 
 hearings are such proceedings
 
 (id.; see also, People v Sloan,
 
 79 NY2d 386,
 
 supra
 
 [voir dire of prospective jurors];
 
 People v Turaine,
 
 78 NY2d 871,
 
 supra
 
 [hearing on admissibility of defendant’s alleged threats against a witness];
 
 People v Anderson,
 
 16 NY2d 282 [hearing on a motion to suppress]). The purpose of
 
 Sandoval
 
 hearings, we reasoned, "is to determine the extent to which the defendant, if he testifies, will be subject to impeachment by cross-examination about prior bad acts”
 
 (id.,
 
 79 NY2d, at 660). Thus, the court must consider the defendant’s criminal history to determine if the probative value of the evidence of past bad acts outweighs its prejudicial impact. Of course, this determination involves consideration of numerous factors
 
 (see, id.,
 
 at 661). The potential for defendant’s meaningful participation during determination on the merits of the
 
 Sandoval
 
 motion becomes apparent when considering these factors: "the defendant is in the best position to point out errors in the [criminal record], to controvert assertions by the prosecutor with respect to uncharged acts and to provide
 
 *597
 
 counsel with details about the underlying facts of both charged and uncharged acts”
 
 (id.).
 

 Just as is the case with respect to
 
 Sandoval
 
 hearings, the prospective use of prior bad acts of the defendant at his or her trial on new charges is also at issue in hearings held pursuant to
 
 People v Ventimiglia
 
 (52 NY2d 350,
 
 supra).
 
 The purpose of the
 
 Ventimiglia
 
 hearing is to determine whether alleged prior bad acts of the defendant can be used by the prosecution as
 
 direct evidence
 
 of defendant’s guilt. The court is charged with weighing the probative value of the uncharged crimes against their potential for prejudice
 
 (id.,
 
 at 359-360). As part of this discretionary balancing process, the court must consider " 'the degree to which the evidence persuades the trier of fact that the particular fact exists and the [logical] distance of the particular fact from the ultimate issues of the case’ ”
 
 (id.,
 
 at 360).
 

 Thus, the possibility that a defendant’s participation at the hearing would be meaningful is apparent. The hearing in this case involved four uncharged crimes dating as far back as 1981. Defendant was in the best position to deny or controvert the allegations with respect to the uncharged crimes, to point out errors in the prosecutor’s account, and to provide counsel with the details of the underlying facts
 
 (see, People v Dokes,
 
 79 NY2d, at 661,
 
 supra).
 
 "In short, the defendant’s presence [would have] help[ed] to ensure that the court’s determination [was] not * * * predicated on the prosecutor’s 'unrebutted view of the facts’
 
 (People v Ortega,
 
 78 NY2d 1101, 1103)”
 
 (People v Dokes, supra,
 
 at 661). We, therefore, conclude that defendant indeed had a right to be present at the
 
 Ventimiglia
 
 hearing.
 

 In this case, however, we conclude that defendant waived his right to be present. When the court initially set a date for the
 
 Ventimiglia
 
 hearing, defendant requested in open court that his presence at the hearing be waived. The request, made by his attorney in defendant’s presence, was clearly voluntary, and clearly at his request — the attorney explained to the court that the defendant had been "calling his boss all morning.” Uncontestably, defendant was then aware that the hearing would take place without him if he failed to appear, and that he had the right to be present at the hearing. Otherwise, there would have been no purpose for seeking permission to be absent from the hearing. Moreover, there is evidence in the record to support an inference that defendant
 
 *598
 
 did have knowledge of what would be at issue at the
 
 Ventimiglia
 
 hearing: the prosecutor and Judge discussed specific evidence of bad acts, admissibility of which would be in question at the hearing, in defendant’s presence, just after he requested his waiver. This express waiver on its face was not limited merely to the date initially fixed for the hearing.
 

 The foregoing amply demonstrates that defendant knowingly, intelligently and voluntarily waived his right to be present at the
 
 Ventimiglia
 
 hearing. The trial court granted defendant’s initial waiver request and was not required to engage defendant in any additional on-the-record discussion
 
 (see, People v Moissett,
 
 76 NY2d 909, 910;
 
 People v Harris,
 
 61 NY2d 9). " '[TJhere is no requirement that the Judge conduct a
 
 pro forma
 
 inquisition in each case on the off-chance that a defendant who is adequately represented by counsel * * * may nevertheless not know what he is doing.’
 
 (People v Francis,
 
 38 NY2d 150, 154.) Overall, a sound discretion, exercised in cases on an individual basis is preferable to a ritualistic uniform procedure”
 
 (People v Harris, supra,
 
 at 16).
 

 Defendant’s actions following the express waiver completely remove any possible doubt that it was intended to cover any adjourned date for the
 
 Ventimiglia
 
 hearing. After the
 
 Ventimiglia
 
 hearing was held, but before the trial began, defendant was given an opportunity to raise any objection to the occurrence of the hearing in his absence. Specifically, the prosecutor asked defendant whether he was "aware he had a right to be present at [the
 
 Ventimiglia]
 
 hearing and whether or not he [was] going to contest that.” Defense counsel requested that defendant not be required to answer at that time because she did not have her "information”. The Judge told defendant and his attorney to discuss defendant’s absence from the hearing, and if they had any objections, to bring them to his attention. All this took place before trial, when there was time to reopen the
 
 Ventimiglia
 
 hearing. However, neither defendant nor his counsel ever raised an objection to defendant’s absence from the hearing, although invited to do so. Instead they proceeded to trial.
 

 The Appellate Division erroneously disregarded the express waiver and defendant’s posthearing exchange with the trial court, both of which established that defendant had willfully absented himself from the hearing.
 

 Even if the express waiver of presence were inadequate, a valid implied waiver has been established from this record.
 
 *599
 
 A valid waiver of presence at trial will be implied if the record reflects that the defendant is "aware that trial will proceed even though he or she fails to appear”
 
 (People v Parker,
 
 57 NY2d 136, 141;
 
 see also, People v Epps,
 
 37 NY2d 343,
 
 cert denied
 
 423 US 999). This record clearly reflects that defendant knew that the
 
 Ventimiglia
 
 hearing had been scheduled and would proceed in his absence, having asked that his presence be excused in order to avoid conflict with the demands of his employment.
 

 Moreover, defendant’s failure to raise any objection to the occurrence of the proceeding in his absence when the court instructed the defendant to raise any such objections is also evidence of implied waiver. In
 
 People v Connor
 
 (63 NY2d 11), we deemed defendant to have knowingly and intelligently waived his right to be prosecuted on an information based in part on his failure "to bring [any oversight] to the attention of the trial court at a time when the oversight could readily and promptly have been remedied”
 
 (id.,
 
 at 16). Similarly, defendant here proceeded to trial without making the objection the court expressly invited, thereby precluding the court from reopening the
 
 Ventimiglia
 
 hearing or taking any other then-available corrective measures. Defendant’s failure to object must, in this context, be interpreted as an acquiescence in the prior proceedings and his absence from them.
 

 In sum, the totality of the record establishes that defendant knowingly, voluntarily and intelligently waived presence at the
 
 Ventimiglia
 
 hearing.
 

 Accordingly, the order of the Appellate Division should be reversed and the case remitted to the Appellate Division for consideration of the facts (CPL 470.25 [2] [d]; 470.40 [2] [b]) and issues raised but not determined on the appeal to that Court.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Ciparick concur.
 

 Order reversed and case remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with the opinion herein.